IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| **Carole Lindquist**, | C/A 2:11-3181-CWH-BM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Ray Tanner and Charleston County Parks and Recreation Commission, a division of Charleston County**, | |
| Defendants. | |

This action has been filed by the Plaintiff, a former employee of the Defendant Charleston County Parks and Recreation Commission, alleging various causes of action against the named Defendants. The Defendant Tanner is alleged to be an assistant manager with the Recreation Commission, and was one of Plaintiff's supervisors.

Shortly after the filing of the Amended Complaint in this action, the Defendant Recreation Commission filed a motion to dismiss Plaintiff's First, Second and Fifth causes of action as against this Defendant. The Defendant Tanner also filed a motion to dismiss, seeking dismissal of Plaintiff's First and Fifth causes of action against him. After receiving an extension of time, Plaintiff filed memoranda in opposition to the Defendants' motions, following which the Defendant

1



Recreation Commission and Tanner filed reply memoranda.

These motions are now before the Court for disposition.[1]

**Allegations of the Amended Complaint**

Plaintiff alleges that she was employed by the Defendant Recreation Commission from February 25, 2008 to November 29, 2010. Plaintiff alleges that she was offered a full-time management position working with the Recreation Commission at its Mullet Hall Equestrian Center on Johns Island, South Carolina, which she accepted, "thereby forming a contract of employment." Plaintiff alleges that she was initially contacted by the Defendant Tanner, Assistant Manager, about an operations position that was open, and that she also discussed the terms and conditions of this position with Maintenance Supervisor Mark Bullock. Plaintiff alleges that Tanner told her that her salary was being budgeted from the Maintenance Department, but that this was not of any concern as this was the same way he [Tanner] had been hired. Plaintiff further alleges that she was advised by Tanner and Bullock that in order to by-pass an advertising requirement, they would designate her initially as a seasonal employee, but that this was only a designation for administrative convenience. Plaintiff alleges that she did not accept a position as a seasonal employee, nor was she offered such a position. Plaintiff alleges that she then "entered [into] a contract of employment with the Defendant CCPRC. The terms and conditions of the contract were both oral and written and included the CCPRC's policies and procedures."

Plaintiff alleges that her supervisors were Tanner and Operations Supervisor Wendy

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed motions to dismiss. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

2



Jackson, and that her duties were always Operational. Plaintiff alleges that in January 2009 she was assured that her full-time Operations position had been formally budgeted to Operations as of July 1, 2009. Plaintiff also alleges that within six months of her hiring, the technical designation of her position became full-time, although this did not affect her duties and responsibilities.

Plaintiff alleges that during her tenure at Mullet Hall, as early as May 2008, she became the victim of sexually explicit and inappropriate language and behavior by the Defendant Tanner. Plaintiff alleges that Tanner's conduct included crude and explicit language, unwanted touching and grabbing of the Plaintiff, kissing Plaintiff on the mouth, urinating in her presence, following her in a menacing manner and sneaking up behind her, blocking her movements, and intimidation of a physical and verbal nature. Plaintiff alleges that because of the nature of her work, she was required to be alone in remote areas of the facility from time to time, and that "upon information and belief" she was followed to remote areas by Tanner and caused to feel exposed, frightened and intimidated, especially so after Tanner became aware of her complaints. Plaintiff further alleges that she was the victim of intimidating behavior by co-worker Robert Newman.

Plaintiff alleges that she complained on numerous occasions to her supervisor, Wendy Jackson, pursuant to the Recreation Commission's appropriate policies and procedures. Plaintiff alleges that these complaints occurred over the initial ten (10) month period that she worked at Mullet Hall. However, Plaintiff alleges that Jackson failed to follow the Recreation Commission's procedures by failing to take the matter seriously, designating Tanner's behavior as merely "cocky". Further, although Jackson allegedly spoke to Tanner, Plaintiff alleges that the sexually harassing and inappropriate behavior continued and escalated.



Plaintiff alleges that on March 5, 2009, she reported another incident of unwanted and unacceptable physical touching and kissing and attempted kissing by Tanner to Maintenance Supervisor Mark Bullock. Plaintiff alleges that she never encouraged Tanner, and made it clear that his advances were unwanted. Thereafter, on March 24, 2009, Plaintiff filed a formal EEO complaint with the Recreation Commission's Human Resources Department, since no action had been taken with regard to her complaint. Plaintiff alleges that her supervisors claimed that they had investigated her allegations, but later admitted that they had not performed an investigation.

Plaintiff alleges that, prior to her formal HR complaint, she had received good reviews for her work. However, within one month of filing her complaint with Human Resources, her performance reviews and ratings dropped significantly, even though Plaintiff alleges her work continued to be of the same good quality. Plaintiff further alleges that after her April 2009 review, she did not get another written review until her termination in November 2010. Plaintiff alleges that she inquired about and pursued her complaint up the chain of command pursuant to the Recreation Commission's Policies and Procedures, but was advised by her supervisors that they did not believe her allegations that she was being harassed. Plaintiff alleges that, after she filed her HR complaint, she had several discussions with Jackson, Bullock and Supervisor Dave Chapell regarding her complaints, all to no avail.

Plaintiff alleges that after she filed her formal HR complaint, she ceased getting pay increases, her hours were intentionally and systematically diminished, and eventually she was removed from the schedule under the pretext of lack of work. Plaintiff alleges that in the Fall of 2008, she averaged thirty-five hours per week plus overtime, but that after the HR complaint was



filed, the Defendants intentionally and systematically reduced her hours, first to thirty hours (which is less than required for a full-time position), and then by ceasing to assign her to work shows, effectively eliminating overtime.  Plaintiff alleges that when she filed a complaint with the Equal Employment Opportunity Commission (EEOC) in December 2009, her hours were further reduced to twenty-five hours, following which her hours were reduced again to fifteen hours in April, and to five hours as of August 2010.  Plaintiff alleges that, although the Defendants claimed that her reduction in hours was necessitated by lack of work, the Defendants had actually hired personnel during that time, including outside workers for shows instead of offering overtime to the Plaintiff.

Plaintiff further alleges that as of May 2009, the Defendants drastically altered their attitude toward the Plaintiff; she was deprived of her management and operations duties, which Plaintiff believes were then assigned to new hires; that she received undue attention and unequal discipline compared to similarly situated workers; and that she was embarrassed and chastised in front of other employees for activities such as having a personal cell phone and other conduct, which had not only been previously acceptable for her but which Plaintiff alleges continued to be acceptable for other employees.  Plaintiff also alleges that she was increasingly forced to do heavy labor and maintenance work, which she was not hired to do, and which was also above and beyond the maintenance duties occasionally performed by all workers; and that she was mandated to do work without proper training or tools and then chastised or disciplined for not doing it properly or fast enough.  Plaintiff makes other allegations of unfair treatment, such as that she was advised to make her own schedule and then disciplined for not arriving at work in a punctual manner, and being advised that she would no longer be assigned specific tasks and then disciplined for not performing



those tasks. Plaintiff alleges that this unequal and disciplinary conduct was engaged in by Tanner, Bullock, Jackson or Chapel on different occasions.

Plaintiff alleges that she also experienced retaliation from Tanner, who made disparaging remarks about Plaintiff to venders, mandated that she clean up after his personal parties, that she take care of his animals (including buying their food without reimbursement), and by making comments to mutual friends that he "owned" her. Plaintiff alleges that Tanner attempted to discredit her by contesting her veracity with regard to the existence of his unacceptable conduct. Plaintiff alleges that this was all in retaliation for Plaintiff making a complaint about Tanner's unwanted advances, touching, and harassment.

Plaintiff alleges that she was eventually terminated, supposedly for lack of work, which Plaintiff alleges was a pretextural reason, and that her termination was actually retaliation for using the EEO system. Plaintiff alleges that she has experienced extreme emotional trauma, depression and distress as a result of the negative comments about her reputation to vendors and others in the horse community, and from the sexual harassment and hostile environment she endured. Plaintiff further alleges that, since her termination, she has been unable to find work in the equestrian community and has been negatively affected financially.

After exhausting her administrative remedies with the EEOC, Plaintiff filed this lawsuit asserting claims for intention infliction of emotional distress [First Cause of Action] against both Defendants Recreation Commission and Tanner, for Breach of Contract [Second Cause of Action] against the Defendant Recreation Commission, for sexual harassment and a hostile work environment [Third Cause of Action] against the Defendant Recreation Commission, for unlawful retaliatory discharge [Fourth Cause of Action] against the Defendant Recreation Commission, for



defamation and defamation per se [Fifth Cause of Action] against both Defendants Recreation Commission and Tanner, and for civil assault and battery [Sixth Cause of Action] against the Defendant Tanner. See generally, Plaintiff's Amended Complaint.

## Discussion

When considering a motion to dismiss pursuant to Rule 12(b), the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). After careful review and consideration of the arguments presented pursuant to this standard, the undersigned finds and concludes that the Defendants' motions should be **granted**, in part, and **denied** in part, as set forth hereinbelow.

### I.

### (First Cause of Action)

In her First Cause of Action, Plaintiff alleges that the Recreation Commission and Tanner acted "negligently, willfully, wantonly, recklessly, grossly negligently, and intentionally"; engaged in conduct that was "extreme and outrageous as to exceed all possible bounds of decency"; and that as a "direct and proximate result of the outrageous actions taken by and through the agents, servants, officers and or employees of the Defendants", Plaintiff suffered severe emotional distress and outrage, entitling her to damages.[2] Amended Complaint, ¶¶ 77-81.

---

[2]Although Plaintiff alleges in her Complaint that she is entitled to both "actual and punitive"
(continued...)

7



With respect to the Defendant Tanner's motion to dismiss, Plaintiff has withdrawn her claim for outrage (also known as intentional infliction of emotional distress) against this Defendant. See Plaintiff's Memorandum in Opposition [Court Docket No. 22], pp. 3-4; see also [Court Docket No. 30, p. 1, n. 1]. Therefore, Tanner is entitled to dismissal as a party Defendant from Plaintiff's First Cause of Action. With respect to the Defendant Recreation Commission, this Defendant argues that Plaintiff's outrage claim is barred by, inter alia, the exclusive remedy provision of the South Carolina Worker's Compensation Act, the relevant portion of which provides

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all of the rights and remedies of such employee, . . . . as against his employer, at common law, or otherwise, on account of such injury, loss of service or death.

S.C. Code Ann. § 42-1-540.

Plaintiff concedes that her claim for "intentional" infliction of emotional distress against the County Recreation Commission is barred by the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-30, 50. Plaintiff's Memorandum in Opposition [Court Docket No. 21], p. 4; cf. Rucker v. Greenville County Sheriff Dep't., No. 10-1533, 2012 WL 951789 at * 3 (D.S.C. Mar. 20, 2012)[Applying South Carolina Tort Claims Act to counties.]. However, Plaintiff argues that her claim is for "negligent" infliction of emotional distress, which she argues is not barred by the Tort Claims Act, but then somewhat confusingly argues that, because the South Carolina Worker's

---

²(...continued)
damages, Plaintiff has specifically withdrawn any claims for punitive damages against the Recreation Commission under any of her state law causes of action. See Plaintiff's Memorandum in Opposition [Court Docket No. 21], p. 3.

8



Compensation Act only bars claims for "accidental" injuries, her outrage claim should not be dismissed because Plaintiff's injuries were caused by "intentional" acts by the Defendant, even though she has already conceded that the South Carolina Tort Claims Act bars her claim for intentional infliction of emotional distress. See also Washington v. The McCormick Correctional Institution, No. 07-26, 2007 WL 3046696 at * 2 (D.S.C. Oct. 16, 2007)["[A] negligence action would be barred by the exclusive remedy provision of the South Carolina Workers' Compensation Act."].

In any event, the South Carolina Supreme Court has specifically held that claims for intentional infliction of emotional distress are subject to and barred by the South Carolina Workers Compensation Act. Dickert v. Metropolitan Life Ins. Co., 428 S.E.2d 700, 701 (S.C. 1993)[Intentional infliction of emotional distress is within the scope of the Act]; McClain v. Pactive Corp., 602 S.E.2d 87, 89 (S.C.Ct. App. 2004)["[I]ntentional infliction of emotional distress constitutes a personal injury that falls within the scope of the Act."]; Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278 (D.S.C. Sept. 20, 2006). While the Supreme Court has found that an exception to the exclusivity provision of the Worker's Compensation Act can apply where the allegedly intentional conduct was committed by the employer through an "alter ego" of the employer itself; see Edens v. Bellini, 597 S.E.2d 863, 869-870 (S.C.Ct.App. 2004)["An exception to the exclusivity provision exists where the injury is not accidental but rather results from the intentional act of the employer or its alter ego."]'; Tanner does not qualify as an "alter ego" of the Recreation Commission under the allegations of the Complaint. See Dickert, 428 S.E.2d at 701 [To fall under this exception, the tortfeasor must be a "dominant" corporate owner or officer of the employer]; Sturgis v. Safe Passage, Inc., No. 2000-CP-46-1092,

9



2002 WL 1362078 at * 3 (S.C. Comm. Pl. Mar. 11, 2002)[Noting difference between assailant merely being a supervisory employee or a person who can genuinely be characterized as the alter-ego of the corporation]. Further, even if Tanner could be deemed to be the "alter ego" of the Recreation Commission itself, the claim would still be barred by the South Carolina Tort Claims Act, as it would at that point be against Tanner in his official capacity, which would be the same as suing the Recreation Commission itself. See S.C. Code Ann. § 15-78-30, 50.

While Plaintiff could conceivably proceed on a claim for outrage against Tanner in his individual capacity; see Southern Holdings, Inc. v. Horry County, South Carolina, No. 02-1859, 2007 WL 896111 at * 8-9 (D.S.C. Mar. 21, 2007)[allowing claim against Defendant in individual capacity where Defendant is alleged to have acted outside the scope of his employment]; Plaintiff has consented to the dismissal of Tanner as a party Defendant under this cause of action. See Plaintiff's Memorandum in Opposition [Court Docket No. 22], pp. 3-4. Therefore, as the Defendant Recreation Commission is also entitled to dismissal as a Defendant under Plaintiff's First Cause of Action for outrage, this claim should be dismissed in toto.

## II.

### (Second Cause of Action)

In her Second Cause of Action, Plaintiff alleges that she and the Defendant Recreation Commission "entered into a contract of employment, memorialized verbally and by the employer's handbook, policies and procedures", and that the Defendant thereafter breached her contract of employment "by altering and diminishing Plaintiff's hours, job description, [and] paying duties without her acceptance of the same", and by the Defendants "failure to follow its own regulations (which were part of the employment agreement) regarding EEO matters, discipline, termination and



internal investigations." Amended Complaint, ¶¶ 82-90. The Defendant Recreation Commission argues in its motion to dismiss, inter alia, that this claim is subject to dismissal for failure of the Plaintiff to plead the elements of a contract sufficient to take the employer/employee relationship outside of an at-will employment relationship. The undersigned agrees.

The necessary elements of a contract are an offer, acceptance, and valuable consideration. Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. 1997), citing Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co., 437 S.E.2d 122 (S.C. Ct. App. 1993). With respect to employment, however, there is a presumption in South Carolina that employees are at-will, and therefore in order to survive a Rule 12 Motion to Dismiss on a claim for breach of a contract of employment, a Plaintiff must "plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .". Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011)["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'"], quoting Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment'].

Here, a review of the allegations of the Amended Complaint shows that Plaintiff has only alleged in very general and conclusory terms that she was offered a job by the Recreation Commission, that she accepted, "thereby forming a contract of employment", that Tanner and Bullock "were authorized to hire Plaintiff and make her the offer of employment", and that she

11



"discussed the terms and conditions of the position" with both Bullock and Tanner. Amended Complaint, ¶ ¶ 24, 27, 29. Plaintiff further alleges that "terms and conditions of the contract were both oral and written and included the [Recreation Commission's] policies and procedures", that the contract of employment was "memorialized verbally and by the employer's handbook, policies and procedures", and that the Defendant's conduct constituted a breach of that contract. Amended Complaint, ¶ ¶ 33, 83, 86-88. However, these allegations do not establish the existence of an employment contract. Any job is going to involve an offer (by the employer) and acceptance (by the employee), as well as the terms of the employment (things such as a starting salary, etc.), all of which are included in the allegations of the Complaint. That does not, however, mean that Plaintiff had a "contract" for employment. Plaintiff has not alleged that she was hired to work for a definite term or that her obtaining a job with the Recreation Commission had any other indices of a contract of employment, such as buyout provisions, right to severance pay, etc. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.]; Frey v. City of Herculaneum, 44 F.3d at 671 ["Complaint must contain facts which state a claim as a matter of law and must not be conclusory"].

In her response brief, Plaintiff argues that her description of the nature of her employment and the terms and conditions thereof as contained in the Amended Complaint are sufficient to maintain a breach of contract claim, and that with respect to South Carolina being an at-will employment state, the at-will employment status can be altered by a Defendant's conduct, including language in an employee handbook or from oral or other written conduct. However, while Plaintiff is correct that an employer can alter an employee's at-will status through mandatory

12



language in a handbook; cf. Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C.Ct.App. 2006); Plaintiff has identified no such handbook in her Amended Complaint, nor does she set forth any language from any handbook to show a genuine issue of fact as to whether the at-will employment relationship was altered by any such language. See Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]. Rather, Plaintiff simply alleges that she entered into a contract of employment that was "memorialized verbally and by the employer's handbook, policies and procedures." Amended Complaint, ¶ 83. Such general and conclusory allegations are not sufficient to state a claim for breach of contract under the applicable law and standards. See Twombly, 550 U.S. at 555 ["While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level"]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Iqbal, 129 S.Ct. at 1949-1950 ["[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"].

Therefore, the Defendant is entitled to dismissal of this cause of action.³ Amazon, 2011 WL 1100169, at * 6; cf. Williams v. Intier Automotive Interiors of America, Inc., No. 09-1144, 2010 WL 5811848 (D.S.C. Nov. 5 2010); see also Harper, 423 F.Supp. at 196 ["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"].

---

³Defendant Recreation Commission has also moved to dismiss based on the statute of limitations. See Court Docket No. 29, pp. 4-5. However, since the undersigned has found that the Defendant is entitled to dismissal based on Plaintiff's failure to sufficiently allege the existence of a contract, it is not necessary to reach this second issue.



## III.

### (Fifth Cause of Action)

In her Fifth Cause of Action, Plaintiff alleges that Tanner, both in his individual capacity and as Assistant Manager of Mullet Hall, a facility controlled by the Defendant Recreation Commission, sent or caused to be sent, delivered or caused to be delivered, false, defamatory and injurious statements regarding the Plaintiff, that these statements were published to potential employers and others within the equestrian community and to other persons, that Tanner had no legal privilege to publish said statements to any third party, and that the Defendants' conduct constituted defamation and defamation per se, entitling her to damages. Amended Complaint, ¶ ¶ 115-121. Both Defendants assert in their motions to dismiss that Plaintiff has failed to adequately plead a claim for defamation and defamation per se, and also cite the South Carolina Tort Claims Act as a defense to this claim.[4]

Defamatory communications can take two forms: libel and slander. Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct. Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126 (S.C. 1999). Both forms of defamation are alleged in the Amended Complaint. In South Carolina, the elements for a defamation claim are: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Murray v.

---

[4] A tort alleging an injury to reputation is not barred by the exclusivity provision of the South Carolina Worker's Compensation Act. See Ray v. Bechtel Savannah River, Inc., No. 06-2946, 2007 WL 1960587, at * 2 (D.S.C. July 2, 2007), (citing Cason v. Duke Energy Corp., 560 S.E.2d 891, 893 (S.C. 202)). Therefore, that statute is not at issue with respect to Plaintiff's defamation claim.

14



Holnam, Inc., 542 S.E.2d 743, 748 (S.C.Ct.App. 2001). Plaintiff has alleged the necessary elements for a defamation claim in her Amended Complaint. Specifically, she has alleged that Tanner made disparaging remarks about her to vendors including comments intended to discredit her by contesting her truthfulness concerning her conduct, and by also making comments to mutual friends that he "owned" her. Plaintiff further alleges that Tanner published these disparaging comments to third parties, including outside vendors, causing her great humiliation and embarrassment, holding her up to public ridicule and scorn, and damaging her professional reputation such that she has had difficulty obtaining new employment.

Such conduct, if it in fact occurred, could constitute defamation, and even defamation per se, at least with respect to those comments made to outside vendors, as the statements are alleged to have been intentionally made to third parties and the alleged defamatory meaning is arguably obvious on the face of the statements themselves. See Holtzscheither v. Thomason Newspapers, Inc., 506 S.E.2d 497, 508-509 (S.C. 1998)[[D]efamation allows a plaintiff to recover injury to [her] reputation as the result of the defendant's communication to others of a false message about the plaintiff....The defamatory meaning of a message or statement may be obvious on the face of the statement, in which case the statement is defamatory per se.]; White v. Wilkerson, 328 S.C. 179, 183 (1997)[Defamation is actionable per se if it charges the Plaintiff with unfitness in one's business or profession]. While Tanner argues that the South Carolina Tort Claims Act expressly prohibits claims against a government employee for tortuous conduct within the scope of his or her employment, Plaintiff asserts her defamation claim against Tanner both as an agent of the Recreation Commission and individually. Furthermore, the SCTCA does not grant an employee immunity from suit if it is proved his conduct is not within the official scope of his employment *or* he acts with



actual malice *or* he has an intent to harm. See McCall v. Williams, 52 F.Supp. 2d 611, 615 (D.S.C. 1999)["SCTCA does not grant an employee 'immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.'"](quoting S.C. Code § 15-78-70(b)(Supp. 1997)); Sanders v. Prince, 403 S.E.2d 640, 643 (S.C. 1991)[same].

As for the Defendant Recreation Commission, this Defendant argues that, even assuming Tanner made defamatory statements, none of these allegations mention or allege anything about the Recreation Commission, but instead allege comments by Tanner as an individual about personal things unrelated to the Recreation Commission.[5] However, it is certainly arguable that Tanner's comments to outside vendors of the Recreation Commission concerning Plaintiff's veracity and her honesty as an employee of the Recreation Commission, were sufficiently based on both his and the Plaintiff's employment to avoid dismissal of this claim against the Recreation Commission, at least at this early stage of the proceedings. Cf. Yost v. City of Charleston, No. 09-2024, 2009 WL 4162274 (D.S.C. Nov. 24, 2009)[Defamation claim may be maintained against an employer, rather than an agent of the employer, where the defamation is based on one's employment]; King v. Charleston County School Dist., 664 F.Supp.2d 571, 586-587 (D.S.C. 2009). That is all that is required for purposes of stating a claim. Vogt v. Greenmarine Holding, LLC, 318 F.Supp.2d 136,

---

[5]The Defendant Recreation Committee also asserts that Plaintiff's defamation claim should be dismissed because of the use of the conjunctive "and" between "individually" and "agent". However, that is not a basis for dismissal at this time, and in any event at this point in the proceedings, the allegations of the Complaint can be construed as alleging that Defendant Tanner took certain actions in his official capacity and took other actions in his individual capacity. Plaintiff's allegations are also sufficient to meet the standard of § 15-78-70(b), which provides, inter alia, "that the employee's conduct was not within the scope of his official duties *or* that it constitute actual fraud, actual malice, intent to harm, *or* a crime involving moral turpitude."].



144, n. 6 (S.D.N.Y. 2004)[Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"]; see also Austen v. Catterton Partners V, LP, 709 F.Supp.2d 168, 177 (D.Conn. 2010)[Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely"], citing Twombly, 550 U.S. at 556 (internal quotation marks and citations omitted).

Therefore, the Defendants are not entitled to dismissal of Plaintiff's Fifth Cause of Action for Defamation.

## Conclusion

Based on the foregoing, the Defendants' motions to dismiss should be **granted, in part,** and **denied, in part**. The motions should be **granted** with respect to Plaintiff' First and Second Causes of Action, but should be **denied** with respect to Plaintiff's Fifth Cause of Action.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 12, 2012
Charleston, South Carolina



17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

