IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **Carole Lindquist,** | ) | C/A 2:11-3181-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **Ray Tanner and Charleston County** | ) | |
| **Parks and Recreation Commission,** | ) | |
| **a division of Charleston County**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action has been filed by the Plaintiff, a former employee of the Charleston County Parks and Recreation Commission, asserting several state law causes of action as well as federal employment discrimination claims pursuant to Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e, et seq. On February 22, 2013, the Defendants Recreation Commission and Ray Tanner filed motions for summary judgment pursuant to Rule 56, Fed.R.Civ.P. After being granted an extension of time to respond, Plaintiff filed a response in opposition to both of these motions on March 12, 2013, with additional attachments filed on March 13, 2013, following which the Defendants filed reply memoranda on March 21, 2013 and March 26, 2013, respectively.

The Defendants' motions are now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)



1

## <u>Background and Evidence</u>[2]

Plaintiff was hired by the Defendant Recreation Commission as a part-time maintenance assistant on or about February 22, 2008, and was assigned to work at the Mullett Hall Equestrian Park. <u>Plaintiff's Deposition</u>, pp. 52, 57-58, 67; <u>Coulter Deposition</u>, p. 132. Plaintiff's supervisor was Mark Bullock, who was in turn supervised by Wendy Jackson, Manager of the facility. <u>Tanner Deposition</u>, p. 14; <u>Plaintiff's Deposition</u>, p. 175. Plaintiff worked directly with the Defendant Tanner, another employee at the facility, and even though she reported directly to Bullock, she was told by Tanner that she would be working under his direction and that of Jackson. <u>Tanner Deposition</u>, p. 76; <u>Plaintiff's Deposition</u>, pp. 52-53.

Several months after Plaintiff began working at Mullett Hall, Plaintiff commented to Cindy Ware (who kept her horse at Mullett Hall and who had recommended Plaintiff for the job)[3]

---

[1](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]Only excerpts of selected deposition pages have been provided by the parties, which has made an evaluation of the facts difficult. This difficulty is compounded by relevant testimony starting and stopping immediately prior to or following the submitted pages. Nonetheless, even though Rule 56 does not impose upon the District Court a duty to sift through the record in search of evidence to support a litigant's claims on summary judgment; <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994), <u>cert. denied</u>, 513 U.S. 871 (1994); <u>Malina v. Baltimore Gas & Elec.</u>, 18 F.Supp.2d 596, 604 (D.Md. 1998); <u>Hayes v. North State Law Enforcement Officers Ass'n</u>, 10 F.3d 207, 215 (4th Cir. 1993), <u>cert. denied sub nom</u>, <u>Price v. City of Charlotte</u>, 420 U.S. 1116 (1997); the undersigned has culled through what evidence has been provided, and considered and discussed what can be discerned therefrom in the light most favorable to the Plaintiff, the party opposing summary judgment. <u>Pittman v. Nelms</u>, 87 F.3d 116, 118 (4th Cir. 1996).

[3]Tanner testified that he called Ware to ask Plaintiff's name, because he thought she might be a good fit for the job. <u>Tanner Deposition</u>, p. 75.



that Tanner was making inappropriate advances towards her. <u>Ware Deposition</u>, pp. 51, 53. On or about March 5, 2009, Plaintiff complained to Bullock about an incident where Tanner blew her a kiss. Plaintiff told Tanner that she did not appreciate the gesture and not to do it again. An employee counseling statement was prepared which indicates Bullock and Jackson spoke with the Plaintiff on March 12, 2009 to inform her of her rights regarding the situation. This counseling statement (which is dated March 24, 2009) also contains a hand-written comment from the Plaintiff that "[i]n addition to blowing the kiss, Ray Tanner also hugged & kissed me twice & told me he does that to everybody . . . I also informed Wendy Jackson prior to this incident about Ray's behavior". <u>See</u> <u>Plaintiff's Deposition</u>, Exhibit One [Counseling Statement dated March 24, 2009]; <u>see also</u> <u>Plaintiff's Deposition</u>, pp. 99, 113; <u>Tanner Deposition</u>, p. 42; <u>Bullock Deposition</u>, pp. 42, 49-50, 53.

Tanner acknowledged that he had blown Plaintiff a kiss, that Plaintiff had complained to him about it, and he indicated in a written statement that he had apologized and assured Plaintiff that nothing like that would ever happen again. <u>See</u> <u>Defendant's Exhibit</u> [Court Docket No. 45-4, pp. 19-20]. Janet Coulter, the Recreation Commission's HR Director, oversaw the investigation of Plaintiff's complaint and testified that the investigation addressed Plaintiff's concerns. <u>Coulter</u> <u>Deposition</u>, pp. 44-45; 136. Coulter also testified that, after Plaintiff's meeting with staff and the investigation, the harassment stopped. However, Plaintiff testified that, after her meeting with Bullock and Jackson, there were no further incidents of any "physical" contact between her and Tanner. <u>Plaintiff's Deposition</u>, pp. 161-162; <u>Coulter Deposition</u>, p. 44.

Plaintiff testified that following her complaints, her duties were changed and her hours were cut. <u>Plaintiff's Deposition</u>, pp. 195-196, 219; <u>Coulter Deposition</u>, pp. 103-104. For



3

example, Plaintiff testified that she was not required to clean stalls during her first several months of employment. Plaintiff's Deposition, p. 67. Plaintiff also complained about being micro-managed, and about being counseled on use of a cell phone.[4] Plaintiff's Deposition, pp. 150-151, see also Court Docket No. 45-5, pp. 25-26. Plaintiff also complained about unscheduled meetings, that Tanner was making disparaging remarks about her, that Tanner would urinate when she was around, and that at some point he had come up behind her and said "Boo". Plaintiff's Deposition, pp. 118-121, 201, 313-314; Tanner Deposition, pp. 29-30; 113-114, 130. Coulter testified that during a director's luncheon around December 2009, after Tanner was told about Plaintiff's continuing complaints, he said that he felt like "it was best for him just not to have any contact, if possible, with [the Plaintiff]", to ensure that nothing he did might be misconstrued. Coulter Deposition, p. 47. On or about December 10, 2009, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in which she alleged that she had been discriminated against on the basis of her sex and had been retaliated against. See Plaintiff's Exhibit [Charge of Discrimination].

Thereafter, Coulter testified that, over time, Plaintiff's hours were reduced, and she was eventually terminated on November 29, 2010 at the "end of [the] season" because by that time she was no longer needed. Coulter Deposition, p. 81; see also Court Docket Nos. 45-4, pp. 24-26; Plaintiff's Deposition, p. 176. Following receipt of a Right to Sue letter, Plaintiff filed this lawsuit asserting five Causes of Action, as follows: Outrage against both Defendants (First Cause of Action), Breach of Contract against the Recreation Commission (Second Cause of Action), violation of Title

---

[4]Plaintiff testified that her cell phone was taken away and she was given a radio, while other employees were allowed to keep their cell phones. Plaintiff's Deposition, pp. 150-151.

4

VII against the Defendant Recreation Commission based on sex discrimination, a hostile work environment, and retaliation (Third Cause of Action), a state law claim for unlawful retaliatory discharge against the Recreation Commission (Fourth Cause of Action), defamation against both Defendants (Fifth Cause of Action), and civil assault and battery against the Defendant Tanner (Sixth Cause of Action).

## Discussion

In an Order filed September 4, 2012, Plaintiff's First Cause of Action was dismissed. See Court Docket No. 44. The Defendants have moved for summary judgment on all of Plaintiff's remaining claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

### I.

### (Second Cause of Action)

Plaintiff's Second Cause of Action is asserted against the Defendant Recreation Commission. Plaintiff alleges that she and the Recreation Commission "entered into a contract of employment, memorialized verbally and by the employer's handbook, policies and procedures", and that the

5



Defendant thereafter breached her contract of employment "by altering and diminishing Plaintiff's hours, job description, [and] paying duties without her acceptance of the same", and by the Defendant's "failure to follow its own regulations (which were part of the employment agreement) regarding EEO matters, discipline, termination and internal investigations." Amended Complaint, ¶¶ 82-90. The Defendant Recreation Commission argues in it motion for summary judgment, inter alia, that Plaintiff has failed to provide evidence sufficient to meet the elements of a contract to take the employer/employee relationship outside of an at-will employment relationship.

With respect to employment, there is a presumption in South Carolina that employees are at-will. See Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment']; cf. Perrine v. G4S Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011); Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011). Therefore, to survive the Recreation Commission's motion for summary judgment, the evidence before the Court must be sufficient to create a genuine issue of fact that a contract for employment was created in this case. Plaintiff does not contend that she had a written contract with the Defendant, per se. Rather, Plaintiff argues that she had an enforceable "contract" for employment, and was therefore not an at-will employee, "based upon the verbal assurances of the Defendant Mr. Tanner who had the apparent authority to offer the same and bind the entity", as well as pursuant to the terms of the Defendant's employee handbook. Plaintiff's Brief, pp. 38-39.

Plaintiff received one of two handbooks (a Maintenance Seasonal handbook or a Part-Time Employee handbook) during her orientation. Coulter Deposition, pp. 30-31; see also Plaintiff's Exhibits [Handbooks] (Court Docket Nos. 50-14 and 50-15). Plaintiff is unclear as to which of these



two handbooks she received, but acknowledges in her brief that Coulter did state that all employees were "at-will". Plaintiff's Brief, p. 4; see also Coulter Deposition, pp. 32-35. The evidence also reflects that Plaintiff received a "Terms of Employment Notice" when she was hired which stated that she was being hired for a part-time maintenance assistant position with hours that would vary "as needed", and which specifically provided in bold type: **"This is not issued as or to be considered a contract. I understand and agree that my employment is at-will, is for no definite period, and may be terminated at any time without prior notice"**. Plaintiff acknowledged receipt by signing this document. See Defendant's Exhibit [Court Docket No. 45-4, pp. 90-91]; see also Plaintiff's Deposition, p. 94.

The Defendant has also provided a copy of the disclaimer page from the Seasonal employee handbook, which contains the following language in bold type:

> **NOTHING IN THIS MANUAL OR IN ANY OTHER COMMISSIONED DOCUMENT CONSTITUTES AN EMPLOYEE CONTRACT. ALL EMPLOYEES ARE AT-WILL AND MAY QUIT AT ANY TIME FOR ANY REASON AND MAY BE TERMINATED AT ANY TIME FOR ANY OR NO REASON. ALL POLICIES OUTLINED HEREIN ARE INTENDED ONLY AS A GUIDE AND MANAGEMENT RETAINS SOLE DISCRETION TO TAKE A GIVEN COURSE OF ACTION . . . . THE MANUAL IS DISTRIBUTED AND MUST BE READ PRIOR TO ANY PART-TIME/SEASONAL STAFF BEGINNING WORK. STAFF MEMBER IS REQUIRED TO SIGN A FORM STATING HE/SHE HAS READ AND UNDERSTANDS ALL ITEMS COVERED IN THE MANUAL. THE SIGNED FORM IS FILED IN THE EMPLOYEE'S PERSONNEL RECORD.**

Plaintiff signed her signature immediately under this language, dated the date of her hire (which also indicates the handbook Plaintiff received was the Seasonal employee handbook). See Defendant's Exhibit [Court Docket No. 45-4, p. 92]. A copy of the Seasonal employee handbook has been provided by Plaintiff as an exhibit, and which has been reviewed by the Court. See Court Docket



7

No. 50-14.

Nothing in this evidence creates a genuine issue of fact that Plaintiff had a contract of employment with the Defendant. Certainly, Plaintiff has cited to no such evidence. Under South Carolina law, for language in an employee handbook to create binding contractual obligations, the cited provisions or policies must be drafted in sufficiently mandatory terms to give rise to a reasonable expectation on the part of the employee of continued employment. See Small v. Springs Industries, Inc., 357 S.E.2d 452, 455 (S.C. 1987). However, while Plaintiff argues that the Defendant's handbook contains "mandatory language" sufficient to alter her at will status; cf. Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C.Ct.App. 2006); she fails to specifically identify or point to any language in the handbook at issue to meet this standard. Rather, Plaintiff simply alleges in a conclusory manner that language in the handbook created a binding contract. See Plaintiff's Brief, pp. 38-39; see also Amended Complaint, ¶ ¶ 24, 27, 29, 33, 83, 86-88. Such general and conclusory allegations are not in and of themselves sufficient to survive a motion for summary judgment. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

Further, notwithstanding Plaintiff having herself failed to identify any qualifying language, the undersigned has undertaken an independent review of Plaintiff's exhibit [the Seasonal employee handbook] and does not find any language therein sufficient to establish a genuine issue of fact that Plaintiff had a "contract" of employment by virtue of this handbook. Cf. Small, 357 S.E.2d at 455 [only policy drafted in sufficiently mandatory terms may serve to alter at-will employment status]; Grant, 634 S.E.2d at 21-22; Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy



8

or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]. Even with respect to the Equal Employment Opportunity language contained in the handbook, Plaintiff's claim that the Defendant violated the handbook's anti-discrimination policy fails to save her breach of contract claim, as such policies have routinely been held not to, by themselves, constitute a contract. See Court Docket No. 50-14, pp. 18-20; see also Ford v. Musashi S.C., Inc., No. 07-3734, 2008 WL 4414385 (D.S.C. Sept. 23, 2008), adopting in part and denying in part, 2008 WL 4414497, at * 3 (D.S.C. July 11, 2008)["[U]nder South Carolina law where an employee handbook provides a general policy statement of nondiscrimination such a 'provision does not constitute a promise altering the at-will employment relationship'"]; Fyall v. ATC/Ancom of South Carolina, No. 04-23086, 2005 WL 2656962, at * 4 (D.S.C. Oct. 18, 2005] [same]; Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 698 (S.C. 2005), citing McKenzie v. Lunds, Inc., 63 F.Supp.2d 986, 1003 (D.Minn. 1999) and Cherella v. Phoenix Technologies, Ltd., 586 N.E.2d 29, 31 (Mass. 1992).

It is also important to note that South Carolina has provided by statute that an employee handbook will not constitute an express or implied contract of employment if the handbook contains an appropriate disclaimer. See S.C.Code Ann. § 41-1-110. Here, as previously noted, the handbook provided as an exhibit by the Plaintiff does contain such a disclaimer, specifically providing in bold and underlined language (as part of the introductory portion of the handbook wherein the employee acknowledges receipt of the handbook) that the employee understands that they are an at-will employee. See discussion, supra; cf. Marr v. City of Columbia,

9

416 S.E.2d 615, 616 (1992) [where employer conspicuously disclaims the handbook as a contract and the parties have not waived the disclaimer, summary judgment for the employer on the issue of whether the handbook forms an employment contract is appropriate] [Rule 56 motion].

Finally, to the extent Plaintiff's claim is that Tanner, through his discussions with her, created an oral contract of employment, Plaintiff has provided no evidence whatsoever to support a finding that Tanner hired Plaintiff to work for a definite term or that her hiring to a part-time maintenance position had any other indices of a contract of employment, such as buyout provisions, right to severance pay, etc. Indeed, the documentary evidence before this Court reflects the exact opposite. See Defendant's Exhibit (Court Docket No. 45-4, pp. 90-91)[Terms of Employment Notice signed by the Plaintiff]. Therefore, the Defendant Recreation Commission is entitled to summary judgment on Plaintiff's breach of contract claim. Cf. Wadford v. Hartford Fire Ins. Co., 1988 WL 492127 at *5 ["A policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status."]; King v. Marriott Int'l., Inc., 520 F.Supp.2d 748, 756 (D.S.C. 2007)[Finding that the Defendant's promise that "there will be no discrimination or recrimination against an employee who asserts a complaint against [the defendant] does not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated"] (internal quotations omitted); Frasier v. Verizon Wireless, C.A., No. 08-356, 2008 WL 724037, at * 2 (D.S.C. Mar. 17, 2008); Storms v. Goodyear Tire & Rubber Co., 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"]; Horton v. Darby Electric Co., Inc., 599 S.E.2d 456, 460-461 (S.C. 2004) [Manual containing progressive disciplinary

10

procedure did not alter employee's at-will status].

## II.

### (Third Cause of Action)

Plaintiff's Third Cause of Action is asserted against the Defendant Recreation Commission.  Plaintiff alleges in her Third Cause of Action that she was subjected to sex discrimination, a hostile work environment, and was unlawfully retaliated against, all in violation of Title VII of the Civil Rights Act.  As presented, Plaintiff's Third Cause of Action actually sets forth three separate and distinct causes of action, each of which have their own elements of proof. Cf. Murphy v Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011)[finding that Plaintiff's disparate treatment claim, hostile work environment claim, and retaliation claim are all distinct claims that should be alleged in separate counts.].  Therefore, each of these claims have been addressed hereinbelow as separate causes of action.

### Hostile Work Environment Claim

Plaintiff alleges that during her employment by the Defendant, she was subjected to ongoing inappropriate verbal actions as well as wrongful touching and menacing and harassing conduct by the Defendant Tanner, who Plaintiff claims was her supervisor.  To avoid summary judgment on her hostile work environment claim, Plaintiff must have evidence sufficient to create a genuine issue of fact that 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on her gender; 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to her employer. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009); Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th



11

Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999); Scott v. Health Net Federal Services, LLC, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012).

Considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff was subjected to unwelcome conduct in a work related setting when Tanner blew her a kiss, hugged and kissed her, and otherwise engaged in conduct which she considered inappropriate such as urinating in her presence, calling her at home, and harassing her. Plaintiff's Deposition, pp. 99, 113, 314; Tanner Deposition, pp. 29-30, 47; see also Court Docket No. 45-7, pp. 2, 7; see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)["[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances"]; Hoyle v. Freightliner, LLC, 650 F.3d 321, 331-332 (4th Cir. 2011). Plaintiff's evidence further shows that this conduct by Tanner was consistent with his overall general demeanor and the general atmosphere at Mullet Hall as brought about by his conduct. Ware Deposition, pp. 30, 32-33, 42, 45; see Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001)[Rejecting contention that only conduct directed at the plaintiff could be considered in evaluating a hostile work environment claim]; Jennings v. University of North Carolina, 482 F.3d 686 (4th Cir. 2007)(en banc) [Noting that in reviewing hostile environment cases "[a]ll the circumstances are examined . . . [and] [e]vidence of a general atmosphere of hostility toward those that the Plaintiff's gender is considered in the examination of all the circumstances"]. This evidence is sufficient to create a genuine issue of fact as to whether Plaintiff was subjected to unwelcome conduct in a work related setting which created an abusive environment, and that the conduct complained of was in large part based on Plaintiff's gender, to survive summary judgment.

12

Nat'l RR Passenger Corp. v. Morgan, 536 U.S. 101, 115 [Noting that courts review hostile work environment claims "based on the cumulative effect of individual acts"].

The Defendant argues, however, that the conduct alleged is not imputable on some factual basis to the Recreation Commission, because when Plaintiff complained to her superiors about Tanner's conduct, they took prompt remedial action to correct the behavior at issue, following which the unwelcome conduct ceased. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 759 (1998)[Employer may be liable for hostile work environment only if it knew or should have known about the harassment and failed to take effective action to stop it]. However, considered in the light most favorable to the Plaintiff, the undersigned finds that sufficient evidence of employer liability has been presented to avoid summary judgment on Plaintiff's hostile work environment claim.

Where an employee is harassed by a co-worker, the employer may be liable if it knew or should have known about the harassment and failed to take effective action to stop it.[5] Hoyle, 650 F.3d at 335 ["In a case where an employee is sexually harassed by a co-worker, the employer may be liable in negligence of it knew or should have know about the harassment and failed to take effective action to stop it"]. Further, an employer may be subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. Ellerth, 524 U.S. at 765; Faragher . City of Boca Raton, 524 U.S. 775, 789 (1998). While the Defendant contends that Tanner was not Plaintiff's

---

[5]The employer may also be charged with constructive knowledge of co-worker harassment when it fails to provide reasonable procedures for victims to register their complaint. Hoyle, 650 F.3d at 335. The "constructive knowledge" alternative for employer liability is not an issue in this case, as the evidence shows that the Defendant had a procedure in place for employees to register EEO complaints. See Court Docket No. 50-14, pp. 18-20; Coulter Deposition, p. 59.

supervisor, but was a co-employee, pointing to the evidence showing that Plaintiff's supervisors were Mark Bullock and Wendy Jackson; <u>Tanner Deposition</u>, p. 14; <u>Plaintiff's Deposition</u>, p. 175; considered in the light most favorable to the Plaintiff, the evidence also shows that Tanner was the one of the individuals who interviewed Plaintiff and was involved in her hiring, that Tanner acted as Plaintiff's supervisor and provider of instructions during Plaintiff's period of employment, and that the Defendant's HR Director (Coulter) even appears to have testified that she would consider Tanner to have been a supervisor "because of his level", and that in this capacity he could supervise "ones that are less than him that are in maintenance . . . .". <u>Coulter Deposition</u>, p. 88;[6] <u>Plaintiff's Deposition</u>, pp. 53-53; <u>Tanner Deposition</u>, pp. 76, 78; <u>Ware Deposition</u>, p. 45. White it is debatable whether Tanner would qualify as a "supervisor" under these facts for purposes of a Title VII claim; <u>cf</u>. <u>Keeshan v. Eau Claire Cooperative Health Centers, Inc.</u>, No. 05-3601, 2007 WL 2903962, at * 4 (D.S.C. Oct. 2, 2007)[In order to qualify as a supervisor, and individual must be entrusted with the power to hire, fire, demote, promote, transfer, or discipline an employee; an individual is not a "supervisor" solely because he possesses the authority to oversee or direct the operations of another employee]; even if Tanner is considered a co-employee, a reasonable juror could conclude based on the facts presented that the Recreation Commission had actual notice of Tanner's sexually harassing behavior and failed to take effective action to end the harassment.

Plaintiff's testimony is that she notified Wendy Jackson of Tanner's harassing behavior as far back as October 2008, and even with respect to the conduct which lead to the meeting of March 24, 2009, Plaintiff's evidence is that Tanner continued to harass her after that date. <u>See</u>

---

[6]While this testimony appears to be referring to Tanner, because the parties did not submit the prior page of Coulter's deposition, it is not completely clear. <u>See also</u>, n. 2, <u>supra</u>.



Court Docket No. 45-4, pp. 44-45.[7] There is also no evidence that Tanner was ever considered for

a transfer away from the Plaintiff, or that Plaintiff was offered a transfer, and indeed it was not until

December 2009 that Tanner decided he would just stay away from the Plaintiff. See Coulter

Deposition, pp.47, 102. Therefore, while the Defendant certainly has an argument for why Tanner

should not be considered a "supervisor" for purposes of a Title VII claim, even if he is not, the

undersigned does not find that "[n]o reasonable trier of fact could conclude" that the Defendant is

liable to the Plaintiff for having allowed an actionable hostile work environment to exist under the

evidence submitted. Spratley v. Hampton City Fire Dept., 933 F.Supp. 535, 542 (E.D.Va. 1996),

aff'd, 125 F.3d 848 (4th Cir. 1997); Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996); Anderson

v. Liberty Lobby, Inc. , 477 U.S. 242, 259 (1986) ["Credibility determinations, the weighing of

evidence, and the choosing of inferences from the facts" are functions of the jury]; Muhammad v.

Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["Thus, at the summary judgment stage the only

inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the

evidence presents a sufficient disagreement to require submission to [the jury] or whether it is so

one-sided that one party must prevail as a matter of law'"], citing Anderson, 477 U.S. at 250-252;

Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991)["It is not our job to weigh the evidence . . . or to

disregard stories that seem hard to believe. Those tasks are for the jury"] (citation omitted).

---

[7]The Defendant argues that Plaintiff's EEOC charge failed to allege any conduct prior to
March 5, 2009, and that Plaintiff should therefore not be allowed to assert for purposes of her Title
VII claim that any prior conduct occurred or that she had notified her supervisors of any such conduct.
See Defendant's Memorandum in Support of Summary Judgment, p. 3, Plaintiff's Deposition,
Exhibit 10. However, Plaintiff's EEO filings clearly reference allegations by the Plaintiff that the
conduct of which she complained had occurred prior to March 5, 2009. See also Court Docket No.
45-4, p. 53. Therefore, this argument is without merit.

Defendant's motion for summary judgment on Plaintiff's hostile work environment claim should be denied.

### Disparate Treatment Claim

As briefed in her response memorandum, Plaintiff's disparate treatment claim is that she was discriminated against on the basis of her sex when she was terminated by the Defendant.[8] See Plaintiff's Brief, pp. 25-26. This claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff has not offered any direct evidence of gender discrimination,[9] and the Defendant Recreation Commission argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether her termination occurred because of her sex under the McDonnell Douglas proof scheme to survive summary judgment.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her. Second, once this presumption has been

---

[8] Plaintiff also asserts that her termination constituted unlawful retaliation in violation of Title VII, a separate claim which is discussed herein, infra. Murphy v. Suffolk County Community College, No 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011)[Noting that disparate treatment claims and retaliation claims are distinct claims that should be alleged in separate counts.].

[9] Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

16



established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's sex. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of sex discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action (here - termination); and (4) that she was replaced by someone outside of her protected class, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119, 1125 (N.D.W.Va. 1996). It is undisputed that Plaintiff is a member of a protected class, and that she was subjected to an adverse employment action when she was terminated. The Defendant has also submitted no argument, at least for purposes of summary judgment, that the reason Plaintiff was terminated was because of her job performance. See Defendant Recreation Commision's Brief,

17

pp. 22-23, 26. Therefore, Plaintiff has met the first three (3) prongs of her prima facie case. Defendant argues, however, that Plaintiff has failed to show that her termination occurred under circumstances giving rise to an inference of discrimination.[10] The undersigned is constrained to agree.

First, Plaintiff asserts that after she was terminated in November 2010, she was replaced by a male full-time worker (Victor Davis), a job which she apparently believes she should have gotten. However, it is clear in the evidence that Davis was not a new hire: he was already working for the Defendant as part of its maintenance work crew. The members of this work crew had previously driven from place to place covering the maintenance needs at all of the Commission's facilities (including Mullet Hall), but in late 2009 or early 2010 the concept of traveling work crews was discarded. Instead, these maintenance workers were assigned to work at particular facilities, with Davis being assigned to handle the maintenance work at Beachwalker Park (another of the Defendant's facilities) and at Mullet Hall. Coulter Deposition, pp. 81-83, 137-138. Coulter also testified that Mullett Hall and similar type facilities are seasonal venues, and that because of slower business at the end of the season they no longer need as many personnel to staff these venues. That is why they hire so many part-time personnel. Coulter Deposition, pp. 81-85, 137; see also Tanner

---

[10]Defendant actually addresses Plaintiff's disparate treatment claim using the failure to promote prima facie case, based on Plaintiff's argument that she was either hired for or promised a full-time position, and that her failure to receive a full-time position was based on disparate treatment. Defendant's Brief, pp. 17-22. However, as noted hereinabove, in her response brief Plaintiff argues her disparate treatment claim as a termination claim. The Defendant did not address that specific argument or use the termination prima facie case in its reply brief. Nonetheless, Defendant's argument for dismissal of this claim and the evidence submitted also addresses Plaintiff's claim as it relates to her termination. See Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995)[The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged).

Deposition, pp. 81-82.[11] Plaintiff has provided no evidence to dispute this testimony, to show that the Defendant did not hire and terminate part-time positions based on seasonal use of the equestrian facilities, to show that she was replaced in her part-time position by someone from outside of her protected class, or to show in any way that the decision to terminate her employment was based on her gender.[12] Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination].

Further, Bullock was the one who made the decision to terminate Plaintiff's position; Coulter Deposition, pp. 82-84 (see also Plaintiff's Brief, p. 17); and Plaintiff has provided no evidence to show that Bullock had ever made any gender-based discriminatory statements, discriminated against females in general, or had or ever displayed any discriminatory animus whatsoever. Indeed, Bullock interviewed and hired Plaintiff in the first place. See Bullock Deposition, p. 31; Plaintiff's Deposition, pp. 52-53; Tanner Deposition, pp. 75-76. See Jeter v. SMI-Owen Steel Co, Inc., No. 95-0001, 1996 WL 906531 at *4 (D.S.C. Sept. 30, 1996)(citing Proud v. Stone, 945 F.2d 7956, 798 (4th Cir. 1991)); Jiminez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir.) ["[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual [adverse employment actions".], cert. denied, 516 U.S. 944

---

[11]At the time of Tanner's deposition in October 2012, several other personnel changes had occurred at Mullet Hall. Wendy Jackson had been replaced, and Mark Bullock was no longer "stationed there". There were also two part-time employees (both females) who helped with horse shows. Tanner Deposition, p. 82.

[12]It is noted that, while Plaintiff was terminated, two other female part-time employees were not terminated. Tanner Deposition, pp. 116-117.



(1995)]; Buhrmaster v. Overnight Transp. 61 F.3d 461, 464 (6th Cir. 1995) ["[A]n individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."], cert. denied, 516 U.S. 1078 (1996).

Plaintiff has provided no evidence to demonstrate, or from which this Court could infer, a gender animus on the part of Bullock, or to show that the reason she was terminated was because of her gender. Therefore, this claim should be dismissed. Gairola v. Virginia Dep't of General Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [his] disfavorable treatment was the result of discrimination...."]; Rucker v. Greenville Co. Sheriff Dep't., No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012)[Conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion]; Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of [ ] discrimination...."]; see also, Anderson, 477 U.S. at 250 [there must be evidence on which a jury could reasonably find for the Plaintiff].

### Retaliation Claim

With respect to her retaliation claim, Plaintiff alleges that, after she engaged in protected activity by reporting Tanner's discriminatory behavior, the Defendant retaliated against her by altering her duties, making her work more difficult, and ultimately terminating her employment. Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee

20



controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

Considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff engaged in protected activity when she complained about Tanner's conduct and that he was sexually harassing her. Rodas v. Town of Farmington, ___ F.Supp.2d ___, 2013 WL 178152 at * 5 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title VII (such as discrimination based on . . . sex . . .), or making a charge of

21

discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."];

Bowman v. Holopack Intern. Corp., No. 06-1648, 2007 WL 4481130 at * 14 (D.S.C. Dec. 19,

2007)["[T]he opposition clause encompasses informal protests, such as voicing complaints to

superiors or protests using an employer's grievance procedures."].  Plaintiff was also subjected to

an adverse employment action when she was terminated from her employment.  Ainsworth v.

Loudon County School Bd., 851 F.Supp.2d 963, 976 (E.D.Va. 2012)["Adverse employment actions

are those that negatively impact the terms, conditions, or benefits of employment, . . . ., termination

being the quintessential example . . . ."].[13]

　　　　　With respect to whether the evidence shows a causal connection between Plaintiff

having engaged in protected conduct and the actions that were thereafter taken against her, the

undersigned finds and concludes that the evidence is sufficient to create a factual question on this

issue sufficient to survive summary judgment.  Considered in the light most favorable to the

Plaintiff, the evidence shows that after Plaintiff complained about Tanner's conduct, Tanner began

making unsolicited phone calls to the Plaintiff, criticized her work ethic and competency, and gave

her worse job assignments. Ware Deposition, pp. 48-51; Plaintiff's Deposition, pp. 195-196; Coulter

Deposition, pp. 100-101.  Plaintiff had also, prior to reporting Tanner's conduct, received a good

---

[13]It is unclear whether Plaintiff's complaints about having to attend unscheduled meetings, restrictions being placed on her cell phone usage, changes in some of her job duties, and the like constitute "adverse employment actions" for purposes of a Title VII retaliation claim, since they do not appear to have affected her job title, pay, etc.  Cf. Lybarger v. Gates, No. 10-373, 2012 WL 1095915 at * 11 (N.D.Ohio Mar. 30, 2012)["Adverse employment actions are typically marked by a 'significant change in employment status,' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"] (internal citations omitted).  However, Plaintiff's termination is alone sufficient to satisfy this prong of her retaliation prima facie case.

22

employee review, while after she engaged in protected conduct her next employee review turned

negative. See Court Docket Nos. 50-8 and 50-9. Plaintiff's work hours were also reduced, and even

though at the time Plaintiff was hired there had been some discussion about her eventually getting

a full-time position, after her complaints there was no longer any mention of a new position.

Plaintiff's Deposition, pp. 93-94, 195-196, 211, 219; Coulter Deposition, pp. 103-104. Additionally,

although Plaintiff's position was terminated, the positions of two other part-time employees (both

also females) were not eliminated, and these two employees were not terminated.    Tanner

Deposition, pp. 116-117.[14] This evidence, at least for purposes of summary judgment, is sufficient

to establish a causal connection between Plaintiff's protected activity and her adverse employment

action(s).  Cf. Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104

F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . .

evidence to support a claim of discrimination"]; Pantoja v. American NTN Bearing Mfg. Corp., 495

F.3d 840, 850 (7th Cir. 2007)[Timing was "suspicious enough to suffice to support [] prima facie

case."]; see Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima

facie case is not onerous].

        As for whether the Defendant has set forth a legitimate, non-discriminatory reason

for the action taken, as previously discussed herein, supra, the Defendant's evidence reflects that

Plaintiff's termination was a result of a seasonal fluctuation in the Defendant's work force and a

determination that a full-time employee already employed by the Defendant could perform the work

---

[14]While these two other employees were in operations, while Plaintiff was in maintenance,
Plaintiff testified that she also did operations work.  Plaintiff Deposition, pp. 53, 58, 178; see also
Coulter Deposition, p. 144; Tanner Deposition, p. 102.



Plaintiff was performing. See discussion, supra. This evidence is sufficient to establish a legitimate, non-discriminatory reason for the Defendant's actions. See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion]. Nonetheless, there is sufficient evidence of pretext for Plaintiff to survive summary judgment on this claim. LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)[In order to show pretext, "'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'"] ( citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).

Considered in the light most favorable to the Plaintiff, the evidence shows that after Plaintiff complained about Tanner's conduct and accused the Defendant of not responding appropriately to her complaints, Tanner called her at home, she was singled her out for restrictions on cell phone usage, her job duties and work hours were made more onerous, and she received a negative employee review. The Defendant then decided to eliminate her position and terminate her while two other part-time employees were allowed to keep working and were not terminated. This evidence is sufficient to at least raise an inference of material fact as to whether the Defendant had a retaliatory animus against her. Reeves, 120 S.Ct. at 2105-2109 [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]; Muhammad, 36 F.Supp.2d at 243 ["Thus,

24

at the summary judgment stage the only inquiry is the threshold one of determining whether there is a need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the jury] or whether it is so one-sided that one party must prevail as a matter of law'"], citing <u>Anderson</u>, 477 U.S. at 250-252. Therefore, the Defendant's motion for summary judgment with regard to Plaintiff's retaliation claim should be denied.

### III.

### (State Law Claim for Retaliatory Discharge)

In her Fourth Cause of Action (which is asserted only against the Defendant Recreation Commission), Plaintiff asserts that her retaliatory discharge by the Defendant was a violation of the public policy of the State of South Carolina, thereby entitling her to damages. However, although this is a state law claim, both Plaintiff and the Defendant have only addressed Plaintiff's retaliatory discharge claim in their briefs using the Title VII framework; <u>see</u>, discussion, <u>supra</u>; and have not addressed the viability of this claim as a South Carolina public policy tort. Nevertheless, for the reasons set forth hereinbelow, it is readily apparent that Plaintiff's wrongful discharge/public policy cause of action is subject to dismissal because this claim is based on the same allegations which support her claim arising under Title VII, and also because Plaintiff has failed to allege that the cited conduct constituted a crime and/or that the Defendant required her to commit a crime.

In <u>Ludwick v. This Minute of Carolina, Inc.</u>, 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where



25

a retaliatory discharge of an at-will employee[15] constitutes a violation of a clear mandate of public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law". Id, at 216. See also; Culler v. Blue Ridge Electric Cooperative, Inc., 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an employer requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law"; Barron v. Labor Finders of South Carolina, 682 S.E.2d 271, 273 (S.C.Ct. App. 2009), aff'd as modified, 713 S.E.2d 634 (S.C. 2011); although some other situations may also apply. See Washington v. Purdue Farms, Inc., No. 07-3552, 2009 WL 386926 at * 12 (D.S.C. Feb. 13, 2009)["Several types of public policies have been deemed appropriate to sustain this cause of action including: requiring an employee to violate the criminal law, where the reason for the employee's termination was itself a violation of criminal law, obeying a subpoena, refusing to contribute money to a political action fund, and invoking rights under Payment of Wages Act."].

However, Plaintiff has failed to identify any public policy violation with respect to this claim. Rather, Plaintiff argues that it was a violation for the Defendant to discriminate against her based on her gender and in retaliation for complaining about discrimination. Plaintiff's Brief, pp. 17, 25, 28. Even assuming the Defendant did deny Plaintiff her rights under Title VII, however, that is not the commission of a crime, nor is there any allegation that the Defendant required Plaintiff to otherwise violate a public policy. Lawson v. South Carolina Dept. of Corrections, 532 S.E.2d 259, 260-261 (S.C. 2000)[Public policy claim arises where "an employer requires an employee to violate the [criminal] law or the reason for the employee's termination was itself a violation of a

---

[15]As previously discussed in Section I of this Report and Recommendation, supra, Plaintiff was an at-will employee.

26

criminal law"]; <u>King v. Charleston County School District</u>, 664 F.Supp.2d 571, 584 (D.S.C. May 21, 2009); <u>Love v. Cherokee County Veteran's Affairs Office</u>, No. 09-194, 2009 WL 2394369, at * 3 (D.S.C. Jul. 31, 2009)[Granting Rule 12 motion to dismiss where no inference could be drawn from the facts alleged that the Plaintiff's termination was in violation of a criminal law]; <u>Barron v. Labor Finders of S.C.</u>, 682 S.E.2d at 273 [No wrongful discharge action where employee was not asked to violate the law and his termination did not violate the criminal law]; <u>Jefferson v. Chestnut Group, Inc.</u>, No. 08-3728, 2009 WL 302312 at * 2 (D.S.C. Feb. 6, 2009)[Dismissing public policy claim where Plaintiff clearly had a potential remedy under South Carolina human Affairs Law and Title VII]; <u>Nelson v. Science Applications Intern. Corp.</u>, No. 11-2928, 2013 WL 764664 at * * 7-8 (D.S.C. Feb. 7, 2013), <u>adopted by</u>, 2013 WL 754834 (D.S.C. Feb. 27, 2013); <u>cf</u>. <u>Eady v. Veolia Transp. Services, Inc.</u>, 609 F.Supp.2d 540, 559 (D.S.C. 2009)[Plaintiff failed to show violation of public policy where he claimed that he was terminated for refusing to sign a blank affidavit]; <u>Washington</u>, 2009 WL 386926 [Dismissing public policy claim where employer purportedly denied employee's request for FMLA leave, which neither violated a criminal law nor required the employee to do so]; <u>see</u> <u>Merck v. Advanced Drainage System, Inc.</u>, 921 F.2d 549, 554 (4th Cir. 1990)[The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].

Hence, while Plaintiff alleges she was discriminated and retaliated against, it was not because of the violation of any clearly mandated "public policy" as defined by the South Carolina Courts, but because of an alleged violation of her personal rights. The public policy exception for the discharge of an at-will employee encompasses only "public rights", not "private" rights. <u>See</u> <u>Weinberger v. MCI Telecommunications, Inc.</u>, No. 92-2550, 1994 WL 18081 at * 3 (4th Cir. Jan. 25, 1994) ["The public policy exception encompasses only public rights granted by existing law, not

private rights."].  Additionally, the South Carolina Supreme Court has also explicitly held that "[w]hen a statute  creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept. 20, 2006) (citing Lawson, 532 S.E.2d 259); Washington, 2009 WL 386926 at * 12 n. 12.  Here, Plaintiff seeks a remedy for her claim under Title VII, and as Plaintiff has a statutory remedy for her claims, she may not pursue a separate state law cause of action. Palmer, 2006 WL 2708278, at * * 3 and 5; Heyward v. Monroe, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec. 7, 1998)[Finding that Plaintiff's public policy termination claim was appropriately dismissed: "South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law.  It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case"]; Zeigler v. Guidant Corp., No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008) ["The Ludwick exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."]  (quoting Stiles v. American General Life Ins. Co., 516 S.E.2d 449, 452 (S.C. 1999)); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C. 1992); Epps v. Clarendon County, 405 S.E.2d 386, 387 (S.C. 1991).

Therefore, the Defendant Recreation Commission is entitled to dismissal of Plaintiff's wrongful discharge/public policy claim.



## IV.

## (State Law Defamation Claim)

In South Carolina, the elements for a defamation[16] claim are: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C.Ct.App. 2001). In her Fifth Cause of Action, Plaintiff alleges that Tanner, both in his individual capacity and as Assistant Manager of Mullet Hall, a facility controlled by the Defendant Recreation Commission, sent or caused to be sent, delivered or caused to be delivered, false, defamatory and injurious statements regarding the Plaintiff, that these statements were published to potential employers and others within the equestrian community and to other persons, that Tanner had no legal privilege to publish said statements to any third party, and that the Defendants' conduct constituted defamation and defamation per se, entitling her to damages. Amended Complaint, ¶ ¶ 115-121.

Both Defendants assert in their motions for summary judgment that Plaintiff's defamation claim fails for lack of evidentiary support. In her response memorandum, Plaintiff states that her "Complaint sets forth that Defendant Tanner published contentions that she was less than truthful, that he published negative statements to vendors and that he used denigrating and false statements regarding the Plaintiff, including that he 'owned her'". However, while the Complaint

---

[16]Defamatory communications can take two forms: libel and slander. Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct. Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126 (S.C. 1999). Both forms of defamation are alleged in the Amended Complaint.

may make these allegations, Plaintiff does not cite to where any of these allegations find support in the evidence. See Plaintiff's Brief, p. 31. From the Court's own review of the "Statement of Disputed Facts" portion of Plaintiff's brief, Plaintiff appears to reference Coulter's deposition, at pp. 142-143, and Ware's Deposition at pp. 44, 47-48, as evidence which could be construed as supporting this claim. See Plaintiff's Brief, p. 12, ¶ 48.[17] However, no party (including the Plaintiff) has provided the Court with page 142 of Coulter's deposition, while page 143 contains no testimony that would relate to Plaintiff's defamation claim. With respect to the cited pages of Ware's deposition, Ware testified that Tanner saw the Plaintiff as "working for him", that he was the one in charge, and that he "owned" her. Ware interpreted this remark, in part because of hearing Plaintiff's concerns from the other end, as Tanner indicating that it would be his determination whether or not Plaintiff would "go full-time or not work out". Ware further testified that she could not recall ever hearing Tanner say anything derogatory or denigrating about Plaintiff as a person, but that with respect to Plaintiff's work he had said that Plaintiff did not know how to use the equipment, in particular a big tractor mower. Ware Deposition, pp. 44, 47-48.

There is nothing in this testimony or evidence to reflect a false or defamatory statement about the Plaintiff that is actionable as a defamation claim. Murray, 542 S.E.2d at 748. Further, while Plaintiff has also not pointed the Court to any evidence concerning allegedly derogatory or defamatory statements made about the Plaintiff by Tanner to third party vendors (one of her assertions), the Defendant Tanner has provided cites from Plaintiff's deposition where

---

[17]It is noted that Plaintiff does not specifically herself reference her defamation claim in this paragraph of her brief, nor does she identify any other evidence as supporting her defamation claim any where else in her brief. See also, n. 2., supra.

Plaintiff admits that she does not know what statements Tanner may have made to any third party vendor, in particular the owner of Meeting Street Tack. See Plaintiff's Deposition, pp. 201-203. No other evidence with respect to this claim has been presented. Therefore, Plaintiff's defamation claim should be dismissed. Jones v. Camden Police Department, No. 09-2161, 2010 WL 3489021 at * 9 (D.S.C. Aug. 13, 2010)[Granting summary judgment to Defendant where Plaintiff failed to produce evidence showing that the Defendant had spoken with anyone or made any comments to anyone regarding the Plaintiff]; cf. Holtzscheither v. Thomason Newspapers, Inc., 506 S.E.2d 497, 508-509 (S.C. 1998)[Defamation allows a plaintiff to recover injury to reputation as the result of the defendant's communication to others of a false message about the plaintiff.].

## V.

### (State Law Claim for Civil Assault and Battery)

In South Carolina an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the Defendant. Jones by Robinson v. Winn Dixie Greenville, Inc., 456 S.E.2d 429 (S.C.Ct.App. 1995), citing Gathers v. Harris Teeter Supermarket, Inc., 317 S.E.2d 738 (S.C.Ct.App. 1984). Battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree. Jones by Robinson v. Winn Dixie Greenville, Inc., supra. In her Sixth and final Cause of Action, which is asserted only against the Defendant Tanner, Plaintiff alleges that Tanner did intentionally and without consent touch, kiss, attempt to kiss, put his arms on, and otherwise initiate inappropriate physical contact with the Plaintiff to which Plaintiff did not consent or authorize in any way, thereby entitling her to damages.

Considered in the light most favorable to the Plaintiff, Plaintiff's civil assault and battery claim arises out of the incident Plaintiff alleges occurred on March 5, 2009 when "while

working for the Defendant [    ] at Mullet Hall, Defendant Tanner did intentionally and without

consent touch Plaintiff, attempt to kiss her, put his arms on her and initiate other inappropriate

physical conduct". See Amended Complaint, ¶ ¶ 123-124; see also Plaintiff's Deposition, pp. 276-

278. Tanner argues that this claim is subject to dismissal because it is barred by the exclusive

remedy provision of the South Carolina Workers' Compensation Act, the relevant portion of which

provides:

> The rights and remedies granted by this Title to an employee when he and his
> employer have accepted the provisions of this Title, respectively, to pay and accept
> compensation on account of personal injury or death by accident, shall exclude all of
> the rights and remedies of such employee, . . . . as against his employer, at common
> law, or otherwise, on account of such injury, loss of service or death.

S.C. Code Ann. § 42-1-540.

Assuming for purposes of summary judgment that Tanner's conduct meets the

technical definition for assault and battery under South Carolina law, this provision of the South

Carolina Workers Compensation Act provides the exclusive remedy for employees who sustain a

work related injury; Fuller v. Blanchard, 595 S.E.2d 831 (S.C.Ct.App. 2004); and the South Carolina

Supreme Court has held that injuries allegedly incurred as a result of an assault and battery in the

work place fall under this Act. Loges v. Mack Trucks, Inc., 417 S.E.2d 538, 540 (S.C. 1992)["We

hold that summary judgment is appropriate on the allegations of . . . assault and battery as these

constitute personal injuries within the scope of the Act."]. Plaintiff contends, however, that her

claim is not covered by this Act because what happened to her was not an "accident", but was instead

an intentional act, and that § 42-1-540 does not bar a common law action where the employer "acted

with deliberate or specific intent to injure the employee". See Peay, 437 S.E.2d at 65. Plaintiff's

argument fails on several grounds.



32

First, as previously noted, the South Carolina Supreme Court has specifically held that claims arising out of an alleged assault and battery are covered under the Workers' Compensation Act. Loges, 417 S.E.2d at 540. Additionally, while Plaintiff is correct that a claim is not barred by the exclusivity provision of the Workers' Compensation Act where the injury is not accidental, but rather results from the intentional act of the "employer", even assuming that (notwithstanding Loges) Tanner's conduct could be construed as "intentional", this exception only applies where the allegedly intentional conduct was committed by the employer through an "alter ego" of the employer itself. Edens v. Bellini, 597 S.E.2d 863, 869-870 (S.C.Ct.App. 2004)["An exception to the exclusivity provision exists where the injury is not accidental but rather results from the intentional act of the employer or its alter ego."]. Plaintiff argues that Tanner was not a co-employee, but was her boss and therefore constitutes her "employer" for purposes of this cause of action. However, there is no evidence before the Court to show that Tanner, even assuming he could otherwise be deemed to have engaged in "intentional" conduct under the Act, was an alter ego of the Defendant Recreation Commission. See Dickert, 428 S.E.2d 700 [Defining "alter ego" as "dominate corporate owners and officers", and not to include "supervisory employees"]; Washington v. Hilton Hotels Corp., No. 07-2694, 2008 WL 747792, at * 4 (D.S.C. Mar. 17, 2008); Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept. 20, 2006).

While, assuming the facts presented in the light most favorable to the Plaintiff, Tanner may have been empowered to give instructions to the Plaintiff about what duties she was to perform on any given work day, there is no evidence to show that he was even a manager; rather, Bullock was the manager for the maintenance personnel (who included both the Plaintiff and Tanner)

33

while Jackson was the manager for both the operations personnel, as well as overall. <u>Tanner</u> <u>Deposition</u>, pp. 14, 83; <u>see</u> <u>Dickert</u>, 428 S.E.2d at 701 [To fall under this exception, the tortfeasor must be a "dominant" corporate owner or officer of the employer]. Hence, Tanner's conduct (assumed to be true for purposes of summary judgment) was not "intentional" conduct of Plaintiff's employer for purposes of the Act's "alter ego" exception. <u>Cf</u>. <u>Stewart v. McClellan's Stores Co.</u>, 9 S.E.2d 35 (S.C. 1940)[Distinguishing a "malicious" assault and battery by the employer through its alter ego].

In any event, "only those injuries inflicted by an employer who acts with a deliberate or specific intent to injure are exempted from the exclusive remedy of Worker's Compensation coverage". <u>Peay</u>, 437 S.E.2d at 65-66. Defendant represents that Plaintiff conceded during her deposition that Tanner had no intent to injure or hurt her in any way when he hugged and kissed her, citing to page 281 of Plaintiff's Deposition.[18] Hence, any "injuries" suffered by the Plaintiff as a result of this incident are covered under the Worker's Compensation Act. <u>see</u> <u>Dickert v.</u> <u>Metropolitan Life Ins. Co.</u>, 428 S.E.2d 700 (S.C. 1993) [Holding that co-employee who negligently injures another employee while in the scope of employment is immune under the Workers Compensation Act and can not be held personally liable"]; <u>see also</u> <u>Peay v. U. S. Silica, Co.</u>, 437 S.E.2d 64, 65 (S.C. 1993)[Workers' Compensation statutes are construed liberally in favor of coverage, and any exception to Workers' Compensation coverage must be narrowly construed]; <u>Loges</u>, 417 S.E.2d at 540 [Injuries suffered as a result of alleged assault and batter covered by

---

[18]Defendant quotes Plaintiff's deposition testimony from p. 281 [Q: "Did - when Ray came over and put his arms around you and hugged you and kissed you, did you have any concern that he was going to injure you or hurt you in any way?" A: "No"]. <u>See</u> Defendant's Reply Brief, p. 7, n. 31.

Worker's Compensation Act].

Therefore, Tanner is entitled to summary judgment on this claim.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motions for summary judgment be **granted**, in part, and **denied**, in part.

The Defendant Recreation Commission's motion for summary judgment should be **granted** with respect to Plaintiff's Second Cause of Action (Breach of Contract), Fourth Cause of Action (State Law Retaliatory Discharge), and Fifth Cause of Action (Defamation). The Defendant Recreation Commission should also be **granted** summary judgment on the claim for disparate treatment gender discrimination contained in Plaintiff's Third Cause of Action. The Defendant Tanner should be **granted** summary judgment on Plaintiff's Fifth Cause of Action (Defamation) and Sixth Cause of Action (Civil Assault and Battery). If the Court adopts this recommendation, Tanner should be dismissed as a party Defendant, in toto.

The Defendant Recreation Commission's motion for summary judgment on Plaintiff's claims for Hostile Work Environment and Retaliation under Title VII as contained in her Third Cause of Action should be **denied,** and those claims should proceed to trial.

The parties are referred to the Notice Page attached hereto.

June 26, 2012
Charleston, South Carolina

Bristow Marchant
United States Magistrate Judge



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



36