IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC
2013 AUG 15 P 1:41

| | |
|---|---|
| Carole Lindquist, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | C/A No. 2:11-3181-RMG |
| ) | |
| Ray Tanner; Charleston County Parks ) | |
| and Recreation Commission, ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

This matter comes before the Court on two motions for summary judgment, one filed by Defendant Charleston County Parks and Recreation Commission ("the Commission") on February 22, 2013, and the other filed by Defendant Ray Tanner the same day. (Dkt. Nos. 45, 46). For the reasons set forth below, the Court GRANTS these motions in part, and DENIES them in part, consistent with the Magistrate Judge's Report and Recommendation on these motions but adding additional analysis in light of recent Supreme Court precedent.

**Factual Background**

On November 21, 2011, Plaintiff Carole Lindquist ("Plaintiff") filed this action against the Commission, her former employer, and Ray Tanner, a Commission employee who managed operations at the site where Lindquist worked. (Dkt. No. 1). Plaintiff asserts several state law causes of action and federal employment discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (*Id.*). This case was referred to a United States Magistrate Judge for all pretrial proceedings. *See* 28 U.S.C. § 636(b); Local Civil Rule 73.02(B)(2) DSC.

-1-

On February 22, 2013, Defendants each filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. Nos. 45, 46). Plaintiff then filed a response in opposition. (Dkt. No. 49). Defendants subsequently filed reply memoranda. (Dkt. Nos. 52, 55).

The Magistrate Judge issued his Report and Recommendation ("R&R") on these motions on June 26, 2013, recommending that this Court grant Defendants' motions in part, and deny them in part. (Dkt. No. 58). Specifically, the Magistrate Judge recommended granting: (1) the Commission's motion for summary judgment on Plaintiff's claims for breach of contract, gender discrimination, retaliatory discharge under state law, and defamation; and (2) Defendant Tanner's motion for summary judgment on Plaintiff's claims for defamation and civil assault and battery; which would leave no claims outstanding against him. (*Id.* at 35).[1]

The Magistrate Judge also recommended denying the Commission's motion for summary judgment on Plaintiff's Title VII claims for hostile work environment and retaliation. (*Id.*). The Commission filed objections to these portions of the R&R, arguing *inter alia* that the Magistrate Judge's analysis was rendered erroneous by two recent Supreme Court decisions construing Title VII: *Vance v. Ball State*, __ U.S. __, 133 S. Ct. 2434 (2013), and *University of Texas Southwestern Medical Center v. Nassar*, __ U.S. __, 133 S. Ct. 2517 (2013). (Dkt. No. 60). Plaintiff responded to Defendants' objections, (Dkt. No. 64), and Defendants replied to that response, (Dkt. No. 65).

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.

---

[1] Neither party filed objections to these portions of the R&R, and the Court adopts them. *See Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

*Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," and is required to make a *de novo* determination on those portions of the R&R to which specific objection has been made. 28 U.S.C. § 636(b)(1).

Defendants moves for summary judgment. Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed "material" if proof of its existence or non-existence would affect the disposition of the case, and an issue of material fact is "genuine" if a reasonable jury presented with the evidence might return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996); *see Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987) (stating that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts").

## Discussion

The Magistrate Judge thoroughly reviewed the pleadings, accurately summarized the law, and correctly concluded that the Court should deny summary judgment to Defendant Commission on Plaintiff's Title VII claims for hostile work environment and retaliation. (Dkt. No. 58).

*A. Hostile Work Environment*

In its objections to the R&R, the Commission argues that: (1) the alleged harassment was not "sufficiently severe or pervasive to alter the conditions of employment and create and abusive

atmosphere," (2) the alleged harassment is not "imputable to the employer," because Defendant Tanner was not a "supervisor" under Title VII; and (3) if Tanner is not a supervisor, Plaintiff has not otherwise proven the Commission's negligence in its handing of her complaints. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331, 335 (4th Cir. 2011) (setting forth the elements of a Title VII hostile work environment claim).

First, the Court finds that the alleged harassment was, when viewed in a light most favorable to Plaintiff, "sufficiently severe or pervasive." *Id.* As the Commission argues in its objections, to satisfy this element of her claim, Plaintiff must show both that she subjectively perceived the environment as hostile or abusive, and [that] that perception [was] objectively reasonable." *Id.* at 333. The Commission argues that the harassment alleged could not, as an objective matter, be perceived as sufficiently severe or pervasive. (Dkt. No. 60 at 3–4).

The "objective" prong of this inquiry considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). [M]ere offensive utterance[s] . . . which engender[] offensive feelings in an employee" do not "affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *see also Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.").

During Plaintiff's tenure as a Commission employee, Defendant Tanner allegedly blew her a kiss, hugged and kissed her multiple times, urinated in her presence frequently, called her at home,

-4-

blocked her exit from a shed when the two were alone, and snuck up on Plaintiff and said "Boo!" (Dkt. No. 58 at 12). Given the totality of this alleged pattern of conduct, and particularly due to the incidents involving physical contact or intimidation, a factfinder viewing this evidence in a light most favorable to Plaintiff could reasonably conclude that an average person in Plaintiff's position would have found the conduct sufficiently severe or pervasive as to alter the terms or conditions of her employment. *Cf. Scott v. Ameritex Yarn*, 72 F. Supp. 2d 587, 590 (D.S.C. Nov. 19, 1999) (finding a genuine issue of material fact where the alleged harasser physically blocked the plaintiff's way, called her at home on several occasions, and blew her a kiss once).

Defendants also argue that the Supreme Court's recent decision in *Vance v. Ball State*, ___ U.S. ___, 133 S. Ct. 2434 (2013), should alter the Court's conclusion about whether the alleged harassment is imputable to the Commission. In *Vance*, the majority held "that an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance*, 133 S. Ct. at 2443 (*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Based on that holding, Defendants argue that because Defendant Tanner was not Plaintiff's direct supervisor under the Commission's chain of command, the Commission cannot be held vicariously liable for Tanner's alleged actions toward Plaintiff. Defendants overread *Vance*.

Though in *Vance* the Supreme Court did reject a "more open-ended approach . . . which ties supervisor status to the ability to exercise significant direction over another's daily work," it nonetheless recognized that supervisor status is not conferred solely by formal designations but,

-5-

rather, can also come about where an alleged harasser amounts to a *de facto* supervisor based on the "tangible actions" that individual has in fact been empowered by the employer to take "against the victim." *Id.*; *see id.* at 2448 ("[T]he authority to take tangible employment actions is the defining characteristic of a supervisor . . . .").

Indeed, the *Vance* majority went to great pains to make this point. For instance, the *Vance* majority confirmed that the alleged harassers in *Faragher*, an earlier Supreme Court case, were "supervisors" under Title VII, though they held the same lifeguard position that the plaintiff held. *See id.* at 2446–47 & 2446 n.8; *see also Faragher*, 524 U.S. at 780–81. According to the Court, the individual defendants in *Faragher* were "supervisors" because their recommendations with respect to hiring, firing, discipline, raises and promotion were, in practice, often followed. *See id.* at 2446–47 & 2446 n.8. The Court further suggested that one of those individual defendants was also "likely" a supervisor because his threat to the plaintiff—"Date me or clean toilets for a year."—"might constitute a tangible employment action," given that the reassignment "likely would have constituted significantly different responsibilities" or alternatively could have "had economic consequences," such as foreclosing eligibility for a promotion. *Id.* at 2446 n.9.

When applied to this case, the reasoning of *Vance* makes clear that summary judgment is not appropriate because questions of fact remain about Defendant Tanner's supervisory status. As the Magistrate Judge noted, when it came to hiring for the position ultimately filled by Plaintiff, it was Tanner who actively sought Plaintiff's name because he thought she might be a good fit for the job. (Dkt. No. 58 at 2 n.3). The record also contains evidence, from multiple sources, that Tanner said he "owned" Plaintiff. (Dkt. Nos. 60-5 at 142–43; 50-4 at 20–21). This comment was interpreted by one listener as meaning that "it would be [Tanner's] determination whether or not [Plaintiff]

would go full time or not work out." (Dkt. No. 504-4 at 21). The fact that Tanner was the most senior employee on-site, and could therefore at times direct Plaintiff's work activities even though she technically fell under the supervision of an off-site employee, may also heighten the import of these statements, (Dkt. No 58 at 14); it makes it reasonable to infer that Tanner would have had significant, possibly determinative, say over Plaintiff's performance reviews, hours, and potential for promotion.

To be sure, all this evidence is not conclusive as to Tanner's supervisory status. It does, however, render reasonable a finding that Tanner was delegated authority allowing him to make effectively determinative decisions with respect to Plaintiff's hiring, promotion and discipline, and firing. Thus, though the Court is mindful of the *Vance* majority's observation that "the question of supervisor status, when contested, can very often be resolved as a matter of law before trial," *id.* at 2450, the Court concludes that the issue of Defendant Tanner's status can not be resolved as a matter of law. After all, the contested factual issues relate directly to whether Tanner met "the defining characteristic of a supervisor"—possessing, as a practical matter rather than a formal matter, authority to take tangible employment action. *See id.* at 2448; *see also id.* at 2450 (noting that "the issue of supervisor status cannot be eliminated from the trial" where "there are genuine factual disputes about an alleged harasser's authority to take tangible employment actions").

Third, the Commission argues that, if indeed Defendant Tanner was not Plaintiff's "supervisor" for Title VII purposes, Plaintiff has otherwise failed to meet her burden of showing that the Commission was negligent by failing to stop alleged harassment committed by her co-worker. "In a case where an employee is sexually harassed by a co-worker, the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action

to stop it." *Hoyle*, 650 F.3d at 335. To meet her burden, Plaintiff "need prove only that [the Commission] failed to exercise reasonable care . . . bearing in mind that" this is the summary judgment stage. *Id.*

Addressing this issue, the Magistrate Judge recommended that a jury should decide whether the Commission's actions amounted to "effective action," *id.*, in light of what the Commission knew or should have known about this alleged pattern of harassment. (Dkt. No. 58 at 14–15). As the Magistrate Judge observed, the alleged harassment continued after it was brought to the Commission's attention in March 2009, and there is no evidence that the Commission ever considered the step of separating Tanner and Plaintiff by transferring one to another placement. (*Id.*). The Court agrees with that assessment. On this record, a reasonable juror could conclude that the Commission's response to Plaintiff's complaints was adequate and reasonably executed. However, "that reasonable juror would not be *compelled* so to conclude, and could reasonably reach a contrary finding." *Id.* at 336. Thus, summary judgment must be denied.

### B. Retaliation

With respect to Plaintiff's retaliation claim under Title VII, the Commission argues that the Magistrate Judge did not consider the recent Supreme Court decision in *University of Texas Southwestern Medical Center v. Nassar*, __ U.S. __, 133 S. Ct. 2517 (2013). In *Nassar*, the Court clarified the standard for establishing the causation element of a *prima facie* case for retaliation under Title VII, requiring "proof that the desire to retaliate was the 'but-for' cause of the challenged employment action." 133 S. Ct. at 2527–28; *see also id.* at 2534 (stating that "a plaintiff making a retaliation claim under [42 U.S.C.] § 2000e-3(a) must establish that his or her protected activity was a 'but-for' cause of the alleged adverse action by the employer").

-8-

Plaintiff has presented sufficient evidence to create a factual question as to whether her complaints concerning Tanner's alleged conduct were the "but-for" cause for her termination. Plaintiff has presented evidence that, following her complaint on March 5, 2009, Tanner began making unsolicited phone calls to her, criticized her work ethic and competency, and gave her worse job assignments. (Dkt. No. 58 at 22). Although she had received a favorable employment evaluation in December 2008, she received a negative review on April 28, 2009, approximately seven weeks after her complaint, (Dkt. No. 50-9 at 2). Additionally, Plaintiff's hours were reduced, and discussions of a possible future full-time position ceased. (*Id.* at 23). Though Plaintiff's termination was twenty months after her March 2009 complaint, these intervening events all allegedly occurred in the period following Plaintiff's March 2009 complaint, and so can support an inference of retaliation. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (noting that, where evidence of temporal proximity is limited, "courts may look to the intervening period for other evidence of retaliatory animus").[2] Equally important to that inference is that, while Plaintiff's position was terminated, the Commission retained two other part-time employees at the site who had not made a complaint. (Dkt. Nos. 50-3 at 50, 58 at 23).[3]

Though the Commission has offered legitimate nondiscriminatory reasons for Plaintiff's firing, such as seasonal fluctuations in business at the site where Plaintiff worked, the evidence

---

[2] *Compare Mitchell v. Sec'y Veterans Affairs*, 467 F. Supp. 2d 544, 554 (D.S.C. Dec. 11, 2006) (finding, based on temporal proximity, that a genuine issue of material fact existed when the adverse employment action occurred three weeks after the alleged protected activity) *with Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. App'x. 229, 233 (4th Cir. 2006) (finding that plaintiff failed to establish a causal connection based on temporal proximity when "at least three to four months" separated the protected activity and adverse action).

[3] While these two employees were working in operations, Plaintiff contends that she was effectively "working in operations" but "being paid out of maintenance." (Dkt. Nos. 45-5 at 6, 50-2 at 78–79).

<000000>

presented by Plaintiff has nevertheless created a question of fact as to whether those reasons were a pretext for retaliation. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (stating that, to prove pretext, a plaintiff must show that an employer's proffered reason is "dishonest and not the real reason for her termination"); *see also Laing v. Fed. Exp. Corp.*, 703 F.3d 713 (4th Cir. 2013) (noting that comparator evidence is "especially relevant to a showing of pretext") (quotation marks omitted). A reasonable factfinder could therefore conclude that Plaintiff's protected activity was the "but-for" cause of the adverse employment action taken against her. *Nassar*, 133 S. Ct. 2534; *see also Laing*, 703 F.3d 713 (noting that the burden-shifting scheme "exists solely to facilitate determination of that ultimate question": whether the plaintiff has created a genuine, triable issue as to whether she was retaliated against). As a result, summary judgment is inappropriate. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (stating that summary judgment may not be granted where a "plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").

## Conclusion

For the reasons stated above, the Court adopts the Magistrate Judge's Report and Recommendation. Accordingly, the Court GRANTS: (1) the Commission's motion for summary judgment on Plaintiff's claims for breach of contract, gender discrimination, retaliatory discharge under state law, and defamation; and (2) Defendant Tanner's motion for summary judgment on Plaintiff's claims for defamation and civil assault and battery. Further, the Court DENIES the Commission's motion for summary judgment on Plaintiff's claims for hostile work environment and

for retaliation under Title VII. With no claims remaining against him, Defendant Tanner is DISMISSED from this action.

**AND IT IS SO ORDERED.**

                                                  Richard Mark Gergel
                                                  United States District Judge

August 15, 2013
Charleston, South Carolina